UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| Byron F. Reed, ) | Case No. 13bk30975 |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| Hassan A. Muhammad, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding No. 13ap01294 |
| ) | |
| Byron F. Reed, ) | Judge Timothy A. Barnes |
| ) | |
| Defendant. ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court arises out of the Amended Motion to Dismiss Pursuant to Rule 15 of the Federal Rules of Civil Procedure (the "Amended Motion to Dismiss") filed by Byron Reed (the "Defendant"), seeking dismissal of the Complaint Objecting to Discharge of Debt Owed to A&H Caring Connections, Inc., under 11 U.S.C. § 523(a)(2)(A) and (a)(6) and 11 U.S.C. § 727(a) (the "Complaint"), filed *pro se* by Hassan A. Muhammad (the "Plaintiff"). Also before the court is the Plaintiff's fully briefed Motion to Strike and Deem Facts Admitted (the "Motion to Strike"). The court will rule on the Motion to Strike at the hearing scheduled for June 23, 2015.

The Amended Motion to Dismiss argues that, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the Plaintiff has failed to state a claim upon which relief may be granted. This conclusion rests upon the Defendant's conclusion that the Plaintiff lacks standing, as the underlying assignment is void as a matter of public policy and as a violation of 705 ILCS 220/2,[1] the "Corporation Practice of Law Prohibition Act," and Illinois law prohibiting "champerty" and "maintenance." The Defendant also asserts that the Plaintiff's past pattern of litigating without a license violates public policy and bolsters the conclusion that the Plaintiff is violating public policy by prosecuting the Complaint. The Defendant therefore asks that the court preclude the Plaintiff from proceeding with this action and dismiss the Complaint with prejudice.

---

[1] The Defendant incorrectly references 720 ILCS 220/2 for this proposition. 720 ILCS 220/2 is instead the "Appliance Tag Act."

For the reasons set forth herein, the court finds that the Defendant has failed to satisfy his burden with respect to a motion to dismiss the Complaint under Rule 12(b)(6). The Defendant's Amended Motion to Dismiss is denied.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in, or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code, or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). All of the counts in the Complaint are based on sections 523 and 727 of the Bankruptcy Code. A proceeding to determine the dischargeability of a particular debt arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(I); *Birriel v. Odeh (In re Odeh)*, 431 B.R. 807, 810 (Bankr. N.D. Ill. 2010) (Wedoff, J.). An objection to a debtor's discharge may only arise in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(A) & (J); *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004); *Hunt v. O'Neal (In re O'Neal)*, 436 B.R. 545, 550 (Bankr. N.D. Ill. 2010) (Schmetterer, J.). It follows, therefore, that a motion to dismiss such a proceeding is also a core proceeding.

As to constitutional authority, while discharge and dischargeability actions may turn on state law, determining the scope of a debtor's discharge is a fundamental part of the bankruptcy process. *See Dietz v. Ford (In re Deitz)*, 469 B.R. 11, 20 (B.A.P. 9th Cir. 2012). As observed by one bankruptcy court, "there can be little doubt that [a bankruptcy court], as an Article I tribunal, has the constitutional authority to hear and finally determine what claims are non-dischargeable in a bankruptcy case." *Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011); *see also Dietz*, 469 B.R. at 20; *White Eagle, Inc. v. Boricich (In re Boricich)*, 464 B.R. 335, 337 (Bankr. N.D. Ill. 2011) (Schmetterer, J.).

Accordingly, final judgment is within the scope of the court's authority.

## PROCEDURAL HISTORY

In considering the Amended Motion to Dismiss, the court has considered the arguments of the parties at the April 15, 2015 hearing (the "Hearing"), has reviewed the Amended Motion to Dismiss [Adv. Dkt. No. 122], the attached exhibits submitted in conjunction therewith, and has reviewed and considered the following filed documents in the above-referenced adversary proceeding:

2

(1) Complaint [Adv. Dkt. No. 1];

(2) Debtor's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "First Motion to Dismiss") [Adv. Dkt. No. 4];

(3) Plaintiff's Response to Defendant's Motion to Dismiss [Adv. Dkt. No. 18];

(4) Debtor's Reply in Support of His Motion to Dismiss and, in the Alternative, Response to Creditor's Motion for Summary Judgment [Adv. Dkt. No. 21];

(5) Debtor's Answer and Affirmative Defenses to Creditor's Complaint Objecting to Discharge of Debt [Adv. Dkt. No. 37];

(6) Debtor's Motion for Summary Judgment Pursuant to Rule 7056-1 of the Federal Rules of Bankruptcy Procedure (the "Motion for Summary Judgment") [Adv. Dkt. No. 43];

(7) Debtor's Statement of Material Facts to Which There Is No Genuine Issue and That Entitle Debtor to Judgment as a Matter of Law [Adv. Dkt. No. 44];

(8) Debtor's Memorandum in Support of His Motion for Summary Judgment [Adv. Dkt. No. 45];

(9) Motion to Amended Complaint to Add Parties and Causes of Action (the "Motion to Amend the Complaint") [Adv. Dkt. No. 63];

(10) Debtor's Motion for Leave to File *Instanter* an Amended Motion to Dismiss Pursuant to Rule 15 of the Federal Rules of Civil Procedure (the "Motion for Leave") [Adv. Dkt. No. 120];

(11) Plaintiff's Response to Defendant's Motion to Dismiss (the "Response") [Adv. Dkt. 136];

(12) Defendant's Reply to Plaintiff's Response to the Amended Motion to Dismiss (the "Reply") [Adv. Dkt. No. 138];

(13) Defendant's Post-Hearing Brief in Support of the Amended Motion to Dismiss (the "Defendant's Brief") [Adv. Dkt. No. 146]; and

(14) Plaintiff's Post Hearing Memorandum (the "Plaintiff's Brief") [Adv. Dkt. No. 148].

Though the foregoing items do not constitute an exhaustive list of the filings in the bankruptcy case and the adversary proceeding, the court has taken judicial notice of the contents of the dockets in these matters. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989) (Goldgar, J.) (recognizing same).

BACKGROUND

This adversary proceeding arises out of a monetary judgment (the "Judgment") entered by the Cook County Circuit Court in case no. 09L000930 (the "State Court Action") against the

Defendant and in favor of A&H Caring Connections, Inc. ("A&H") in an action for breach of contract, fraud and deceptive practices. The Defendant did not appeal.

As a result of financial difficulties including the Judgment debt, the Defendant filed a voluntary petition for bankruptcy relief under chapter 7 of the Bankruptcy Code on August 2, 2013. On August 17, 2013, A&H filed a proof of claim for $412,622, representing the unpaid amount of the Judgment. On November 8, 2013, the Plaintiff filed the Complaint, which is an action based on the Judgment. The Plaintiff asserts standing to do so based on the A&H Caring Connections Inc. Assignment of Interests (the "Assignment") executed by Alice Jackson ("Jackson") in her capacity as President of A&H, dated three days prior to the Complaint, November 5, 2013, and notarized by Maria Bailey ("Bailey"), who is also the Plaintiff's wife.

The Defendant filed the First Motion to Dismiss on December 16, 2013, seeking dismissal of the Complaint under Rule 12(b)(6) on the grounds that the Plaintiff had failed to plead sufficient facts to satisfy Federal Rules of Civil Procedure 8(a) & 9(b). The Plaintiff filed a response to the First Motion to Dismiss, as well as a motion for entry of default against the Defendant for failure to respond to the Complaint, on December 17, 2013. While the motion for default was later withdrawn on January 7, 2014, the general tenor that would guide the proceedings had, however, been established.

The First Motion to Dismiss was denied in an oral ruling delivered by the court on February 25, 2014, as was the Defendant's request for alternate relief through a motion for summary judgment on the Complaint that the Defendant had raised in a reply in support of the First Motion to Dismiss. The Defendant was ordered to file an answer to the Complaint, but granted leave to file a separate motion for summary judgment. On April 2, 2014, the Defendant filed an Answer and on April 11, 2014, he filed the Motion for Summary Judgment.

In the Motion for Summary Judgment, the Defendant argued that the Complaint was barred by *res judicata* and collateral estoppel on the grounds that the Cook County Circuit Court made no explicit finding of fraud in the State Court Action and that the bankruptcy court's review of those findings in determining dischargeability under sections 523 and 727 is an unauthorized exercise of appellate jurisdiction in violation of the *Rooker-Feldman* doctrine. *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983) (together holding that federal courts do not have subject-matter jurisdiction to act as a court of appeal over state court decisions).

After the Motion for Summary Judgment was fully briefed, in an oral ruling delivered on June 3, 2014, the court rejected the Defendant's arguments and denied the Motion for Summary Judgment. The Plaintiff thereafter filed the Motion to Amend the Complaint to add parties and causes of action, which the court also denied. A scheduling order was entered setting deadlines for discovery.

Although trial was initially set for November 18, 2014, complications arose during what became an increasingly acrimonious and drawn out discovery process. The Plaintiff filed a series of motions calling into question the propriety of the Defendant's level of participation in this matter including: a motion to compel the Defendant to respond to the Plaintiff's discovery requests, four motions for sanctions against the Defendant and two motions to strike with respect to the

Defendant's discovery responses.[2] Other than the Motion to Strike, which was filed on February 20, 2015, is fully briefed and is set to be determined by the court at the hearing set for June 23, 2015, each of these motions was either withdrawn by the Plaintiff or mooted by court order.

Both counsel for the Defendant and the *pro se* Plaintiff have contributed to the staunchly adversarial nature of these proceedings. The documents and oral testimony offered by the parties are laden with evidence of their acerbic rapport, prompting the court to issue stern warnings regarding compliance with discovery. Largely due to ongoing conflict, the initial trial date, which had been pushed back to January 14, 2015, was stricken in favor of a continued status hearing on the Complaint. With discovery at an impasse, however, and following the reprimand from the court on the Defendant's behavior, the Defendant filed the Motion for Leave. The court granted the Motion for Leave on February 25, 2015, at which time the Defendant filed the Amended Motion to Dismiss. A briefing schedule was entered on the Amended Motion to Dismiss, and in accordance with which the Plaintiff filed the Response and the Defendant filed the Reply.

At the Hearing on April 15, 2015, the court heard the arguments of the parties and granted them leave to file supporting briefs prior to May 29, 2015. Both parties timely filed such briefs and the court took the matter under advisement.

## APPLICABLE LAW

A. <u>Standards Under Rule 12(b)(6)</u>

Ordinarily, the standards applicable to a motion to dismiss are as follows: A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing sufficiency, the court views the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

The standard for evaluating the sufficiency of the complaint "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (citation omitted); *see also Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) ("A complaint suffices if any facts consistent with its allegations, and showing entitlement to prevail, could be established by affidavit or testimony at a trial."). In ruling on a motion to dismiss, "the Court takes as true all factual allegations in the plaintiff's complaint," *Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007), as well as "information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745-46 n.1 (7th Cir. 2012); *Brisco v. United States (In re Brisco)*, 486 B.R. 422, 427 (Bankr. N.D. Ill. 2013) (Schmetterer, J.) ("A court may take judicial notice of matters of public record, including public court documents, without converting a Rule 12(b)(6) motion into a motion for summary judgment.") (*citing Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)).

---

[2] The Plaintiff filed duplicate motions to strike and/or sanction the Defendant with respect to the Defendant's answers to Plaintiff's requests to admit [Adv. Dkt. Nos. 96 & 98]; for purposes of this summary, they are counted only once.

5

B. <u>Burden of Proof Under Rule 12(b)(6)</u>

A party seeking dismissal under Rule 12(b)(6) "bears a weighty burden." *Hobson v. Kemper Nat'l Servs. Integrated Disability Mgmt.*, No. 1:03-CV-00617-SEB-VS, 2004 WL 578398, at *1 (S.D. Ind. Mar. 18, 2004). This burden requires that the movant establish "the legal insufficiency of the complaint." *Moriarty ex rel. Teamsters Local Union No. 727 Health & Welfare Fund v. K&M Plastics, Inc.*, No. 03 C 7295, 2004 WL 1170000, at *1 (N.D. Ill. Feb. 6, 2004) (*citing Yeksigian v. Nappi*, 900 F.2d 101, 104-05 (7th Cir. 1990)). As such, a claim should be dismissed, "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

"Allegations of a *pro se* complaint are held 'to less stringent standards than formal pleadings drafted by lawyers…' Accordingly, *pro se* complaints are liberally construed." *Id.* at 651 (*quoting Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*)); *see also Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988).

C. <u>Motion to Dismiss for Lack of Standing</u>

In this matter, however, the Defendant challenges the Plaintiff's standing as a grounds for dismissal, based upon the contention that the Assignment is void. In determining a motion to dismiss for lack of standing, the court must similarly "accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Reid L. v. Ill. State Bd. Of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004) (*citing Retired Chi. Police Assoc. v. City of Chi.*, 76 F.3d 856, 862 (7th Cir.1996)). "The plaintiff bears the burden of establishing that it meets the required elements of standing." *Retired Chi. Police Assoc.*, 76 F. 3d at 862 (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

"If standing is challenged as a factual matter, the plaintiff must come forward with 'competent proof'…that standing exists." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). "Competent proof" requires a plaintiff to show that standing exists "by a preponderance of the evidence, or proof to a reasonable probability." *Retired Chi. Police Assoc.*, 76 F.3d at 862.

As a threshold matter, to challenge dischargeabilty under sections 523(a) and 727(a), the Plaintiff must first be a creditor of the Debtor. *See generally In re Volpert*, 175 B.R. 247, 255 (Bankr. N.D. Ill. 1994) (Schmetterer, J.). Whether the Plaintiff is a creditor is a question of state law, *id*, but may be established presumptively by the reasonable inferences in a plaintiff's favor noted above. In this case, the Plaintiff in the Complaint references the Assignment in the Complaint as evidence of his interest in the Judgment debt and his interest in the proof of claim filed by A&H. Based upon the content of the Complaint alone, therefore, and accepting this content as true, the court finds it to be a reasonable probability that the Plaintiff has standing.

The Plaintiff having established standing, the burden then shifts to the Defendant to demonstrate the invalidity of the Assignment.

DISCUSSION

The Amended Motion to Dismiss argues that the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In so doing, the Defendant puts forth an array of theories challenging the Plaintiff's standing. These include: (1) that the Assignment from A&H to the Plaintiff is void as a matter of public policy because the Plaintiff is using the Assignment as a subterfuge to litigate; (2) that the Plaintiff is violating the Illinois Corporation Practice of Law Prohibition Act by illegally representing A&H and other entities in legal proceedings; and (3) that pursuit of the Complaint violates "champerty" and "maintenance" under Illinois law. The Defendant further argues that the Plaintiff has a history of impermissibly practicing law without a license in contravention of the "*pro se* exception" and in violation of public policy, which should preclude him from proceeding in this matter.

In response, the Plaintiff argues that the Assignment is valid; therefore the *pro se* exception permits him to litigate on behalf of his own interests in this and other proceedings.

The court will consider each theory, in turn.

A. The Validity of the Assignment: Assignment as "Subterfuge"

Illinois law provides that, as a general rule, claims are assignable unless assignment of such a claim would violate public policy. *Kleinwort Benson N. Am. v. Quantum Fin. Servs.*, 181 Ill. 2d 214, 224 (1998). On the other hand, the United States District Court for the Northern District of Illinois has held, and the Seventh Circuit has affirmed, that an assignment of claims to a *pro se* litigant solely for the purpose of litigating is void as against public policy. *Todd v. Franklin Collection Serv.*, No. 11 C 6128, 2011 WL 6140863, at *3 (N.D. Ill. Dec. 9, 2011), *aff'd*, 694 F.3d 849, 850 (7th Cir. 2012). In *Todd*, the court applied the Illinois Appellate Court's reasoning in *Biggs v. Schwalge*, that "[a]n assignment cannot be used as a subterfuge to enable [a] plaintiff to indulge his overwhelming desire to practice law, without complying with the requirements for admission to the bar." 341 Ill. App. 268, 271 (1st Dist. 1950).

In *Biggs*, the 100% shareholder and manager of a corporation assigned a claim to himself individually for consideration in the amount of $1.00. *Id.* at 270. In that case, the plaintiff sought to avail himself of the *pro se* exception while concurrently bragging that his legal knowledge and expertise before the court, boasting that he had litigated "several cases" and emerged victorious in "six cases against some reputable law firms." *Id.* The Illinois Appellate Court had little difficulty concluding that the plaintiff in said case was taking assignments solely "for the purpose of indulging his desire to practice law" in violation of public policy. *Id.* at 271.

In *Todd*, the plaintiff sought to purchase claims in order to personally litigate them against the defendant, a collection agency. 694 F.3d at 850. The District Court found the following facts: (1) an agreement was executed between the plaintiff and the claimant in which the plaintiff was designated as the claimant's "client"; (2) prior to the agreement, the plaintiff and claimant did not have any relationship to one another; (3) per the agreement, the plaintiff provided consideration for the opportunity to litigate; and (4) the plaintiff maintained a website describing litigation tactics related to "Litigation via Assignment," where the plaintiff indicated that he had been "litigating consumer-related cases in federal courts since 2002" and that he would "provide free consultations

to people who might have legal claims and [do] all work 'at no out of pocket expense' to his clients." *Todd*, 2011 WL 6140863, at *3.

In addition to these facts, the *Todd* court took judicial notice of, "the *many* other lawsuits [the plaintiff] has filed in this district as an assignee of legal claims [in which] it appears [that the plaintiff] has become an assignee of legal claims solely for the purpose of litigating the claims." *Id.* (emphasis added). This last element did not appear to be dispositive in the court's determination, but rather an additional element to consider in a totality of the circumstances analysis.

The District Court concluded that the plaintiff "had [impermissibly] become an assignee of legal claims solely for the purpose of litigating the claims" and "[s]uch facts indicate that, at the very least, [the plaintiff] has engaged in 'subterfuge to enable [the plaintiff] to indulge his overwhelming desire to practice law.'" *Id. (quoting Biggs*, 341 Ill. App. at 271). The Seventh Circuit affirmed, stating that, "[b]y attempting to litigate ... claims through the guise of an assignment, [the plaintiff] sought to practice law without a license, and therefore the assignment violated public policy." *Todd*, 694 F.3d at 852.

The Defendant relies heavily upon *Todd* and *Biggs* owing to factual similarities between those cases and the case at bar. However, the facts adduced by the Defendant fall short of what the court would need to make a determination in his favor. The Defendant has provided no evidence in this case of an agreement that mirrors the agreement executed in *Todd* between the plaintiff and his "client." Furthermore, while the plaintiff in *Todd* gave consideration to a previously unacquainted "client" for the opportunity to litigate, the Plaintiff here has maintained throughout these proceedings that the Assignment was executed as compensation for $50,000 worth of work that the Plaintiff had previously performed for A&H. Tr. 20-21, April 15, 2015; *see also* Plaintiff's Brief ¶ 8.

This is not an issue of first impression in this court. Judge Schmetterer has issued an opinion featuring similar facts and legal analyses. *Neiman v. Irmen (In re Irmen)*, 379 B.R. 299, 306 (Bankr. N.D. Ill. 2007) (Schmetterer, J.). In *Irmen*, the debtor-defendant served as president of a number of construction companies and the plaintiff as president of a separate company. *Id.* at 305. The plaintiff was also the third party beneficiary of an agreement assigning causes of action held by the debtor's companies to the plaintiff's company. *Id.* The plaintiff, in his capacity as company president, further assigned the claims to himself individually and commenced litigation. *Id.* Citing *Biggs*, the court ruled that the plaintiff was both precluded from representing the company *pro se*, and from pursuing the claims as an assignee, but was permitted to pursue the claims in his capacity as third party beneficiary to the original contract. *Id.* at 307.

Much of the Defendant's Brief is devoted to addressing the similarities between the present case and *Irmen*. Despite his efforts, the Defendant's analysis has missed the mark. The Defendant attempts to liken the Plaintiff's receipt of the Assignment to the assignment in *Irmen*. Defendant's Brief, at 2-4. What the Defendant misses is that both *Irmen* and *Biggs* concern officers or agents of entities who, in those undisputed capacities, have made assignments of claims to themselves individually for the purpose of litigation. To the extent that a common, bright-line rule can be drawn from these cases, it appears to be one that turns on the status of the assignee as an officer or agent of the assignor entity.

The Defendant seeks to draw parallels between this case and *Irmen* and *Biggs* by, in the first instance, attempting to show that the Plaintiff is (or was) an actual officer of A&H. Barring that, the

Defendant seeks to paint the Plaintiff as a *de facto* officer or agent by implicating his personal relationships with individuals associated with A&H and with other seemingly interconnected entities.

As to the former, the Defendant argues that the Plaintiff is an officer, agent or employee of A&H, pointing to the 2009 Annual Report filed with the Illinois Secretary of State, which lists the Plaintiff as Secretary of A&H. Reply Ex. A. At the Hearing, however, the Plaintiff denied that he was an agent or Secretary of A&H and testified that he "never signed any annual reports, any documents, any tax filings, or anything else as a secretary." Tr. 15-16, April 15, 2015. The Plaintiff further argues that the inclusion of his name on the 2009 Annual Report was a "clerical error." Plaintiff's Brief ¶¶ 15, 16. An affidavit signed by Bailey supports this statement and indicates that A&H will amend the 2009 Annual Report. Plaintiff's Brief ¶¶ 16-20. For good measure, the Plaintiff provides the 2011 Annual Report for A&H in which he is not listed as an officer. Plaintiff's Brief Ex. A.

As to the latter, while the court remains suspicious as to what is actually transpiring between the Plaintiff and the multiple entities noted by the Defendant, despite what appears to be considerable investigative effort, the Defendant has failed to present sufficient evidence to support his legal conclusions.

The Plaintiff has also provided affidavits executed by Bailey (Vice President of A&H), Jackson (President of A&H) and Raymond J. Sanders ("Sanders") (former counsel to A&H). These affidavits indicate that Sanders drafted the Assignment at issue and Jackson executed the Assignment in her capacity as President of A&H. Plaintiff's Brief Exs. A & B. Taken together, and in the absence of anything more concrete from the Defendant, these are sufficient for the court to conclude that a reasonable probability exists that the Plaintiff is not acting in violation of the applicable case law.

This is not to say, however, that the Defendant's concerns with respect to the Plaintiff's conduct are entirely unsubstantiated. In particular, the exceedingly short time frame between the Assignment and filing of the Complaint gives the court pause. While the burdens favor the Plaintiff, it should be made clear that the Plaintiff's conduct is suspicious. Raising suspicions alone, however, is not enough for the Defendant to succeed on a motion to dismiss.

In sum, the court finds that the Defendant has presented insufficient evidence. The court therefore concludes that Defendant has failed to satisfy his burden as it relates to the Plaintiff's Assignment as "subterfuge" in violation of public policy.

B. <u>Violation of 705 ILCS 220 (the Corporation Practice of Law Prohibition Act)</u>

"It is black letter law that no layperson can purport to represent a corporation, that a corporation may proceed in legal matters only through an attorney. Where a corporate entity initiates a proceeding *pro se*, the proceeding is void *ab initio*." *In re IFC Credit Corp.*, 420 B.R. 471, 473 (Bankr. N.D. Ill. 2009) (Cox, J.).

This principle is codified in the Illinois Corporation Practice of Law and Prohibition Act, which reads in pertinent part, as follows:

> It shall be unlawful for any corporation to solicit by itself or
> by or through its officer, agent or employee, any claim or demand for

9

> the purpose of bringing an action at law thereon, or for furnishing
> legal advice, services or counsel, to a person sued or about to be sued
> in any action or proceeding, or against whom an action or proceeding
> has been or is about to be brought or who may be affected by any
> action or proceeding which has been or may be instituted in any
> court or before any judicial body or for the purpose of so
> representing any person as attorney or counsel in securing or
> attempting to secure any civil remedy.

705 ILCS 220/2.

Despite the foregoing, the Defendant alleges that this is just what is transpiring here; that the Plaintiff is simply a shill for corporations who cannot otherwise appear *pro se*. In support of this contention, the Defendant raises the same officer and employee arguments discussed above. In light of these, the Defendant seeks to have the court conclude that the Plaintiff's bringing this action is a clear violation of the Corporation Practice of Law and Prohibition Act.

There is no question that the Plaintiff's testimony regarding his relationship with A&H has been less than ideal. For example, the Plaintiff was unable to explain convincingly the underlying $50,000 debt owed to him by A&H, which the Plaintiff indicates was the consideration for the Assignment. Tr. 20-21, April 15, 2015. The text of the Assignment itself references only that the Assignment was made "in exchange for valuable consideration, receipt and sufficiency of which are hereby acknowledged." Complaint, at 18. The Plaintiff's Brief failed to clarify the issue and indeed may complicate the legal question by introducing the term "purchased" with respect to the Plaintiff's interest in the claim [Plaintiff's Brief ¶ 8], potentially implicating *Todd*.[3]

The Defendant has, however, presented no further evidence to indicate that the Plaintiff is an officer, agent or employee of A&H. Even if the court were to accept the 2009 Annual Report as accurate, the Defendant has presented no evidence that the Plaintiff was an officer, agent or employee of A&H at the time of the assignment or at the time the Plaintiff filed the Complaint. According to the Complaint and a copy of the Assignment attached thereto, the Assignment was executed on November 5, 2013, years after the 2009 Annual Report was filed. As such, the Defendant has failed to carry his burden with respect to this particular argument.

Were the court to ignore the evidence to the contrary and conclude that the Plaintiff *was* as an officer, agent or employee of A&H, it would nonetheless remain unclear whether 705 ILCS 220/2 is truly applicable on the facts of this case. Simply being such an officer, agent or employee is not alone enough to trigger the statute. The court must still conclude that such a person is acting on behalf of the corporation for the statute to apply. To lead to such a conclusion, the Defendant has presented considerable circumstantial evidence linking the Plaintiff to various incorporated entities in an effort to demonstrate a pattern of impermissible participation in corporate litigation. While much of this goes to the Defendant's attempt to sway this court's analysis with allegations of past misconduct (as discussed in more detail below), those actions are simply not relevant here.

---

[3] These facts merely illustrate some of the inconsistencies in statements that the Plaintiff has made throughout these proceedings generally, and specifically with respect to his relationship with A&H.

Further, while the Corporation Practice of Law Prohibition Act was enacted to prevent corporations from directly or indirectly practicing law without attorney representation, 705 ILCS 220/0.01, the legislative history on 705 ILCS 220/2 is mostly silent.[4] Some scholars have suggested that "the purpose of this statute may be to prevent champerty" and therefore "the purchase of claims may be unlawful if done by a corporation or on its behalf by one of its agents." Commercial Damages: A Guide to Remedies in Business Litigation, ch. 24, ¶ 24.04 (Matthew Bender). Such arguments are better addressed alongside the Defendant's direct assertion that "champerty" and "maintenance" also prohibit the Plaintiff from proceeding in this matter.

The court now turns to those arguments.

C. "Champerty" and "Maintenance"

Black's Law Dictionary defines "champerty," as follows:

> An agreement between an officious intermeddler in a lawsuit and a litigant by which the intermeddler helps pursue the litigant's claim as consideration for receiving part of any judgment proceeds; specif., an agreement to divide litigation proceeds between the owner of the litigated claim and a party unrelated to the lawsuit who supports or helps enforce the claim.

Black's Law Dictionary (10th ed. 2014).

Put in other words, champerty is "a bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to be recovered." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 729-30 (N.D. Ill. 2014).

The facts in *Miller* concerned a discovery dispute between Miller International Ltd. and Caterpillar, Inc., stemming from a cause of action for misappropriation of trade secrets. *Id.* at 717. Caterpillar claimed that Miller's use of contracted third party funding in litigation violated Illinois law prohibiting maintenance and champerty and was, therefore, a complete defense to the underlying causes of action raised by Miller. *Id.* at 724. The *Miller* court did not agree, noting that "the defense of champerty can only be interposed in an action between the parties to the champertous contract, and does not furnish any reason for refusing relief in the proceeding to which the champertous agreement relates." *Id.* at 726 (*citing Acorn Bankshares, Inc. v. Suburban Bancorp, Inc.*, No. 85 C 329, 1985 WL 2671, at *7 (N.D. Ill. Sept. 18, 1985)).

Assuming, for purposes of this discussion, that it is appropriate for the court to make a determination as to champerty and to the extent that champerty still exists as a separate offense under Illinois law,[5] the case law is clear that, "[a]n essential element of a champertous contract is an

---

[4]    While 705 ILCS 220/1, 3-5 have been often opined upon, there is an absence of case law with respect to 705 ILCS 220/2.

[5]    A historical review of Illinois case law shows that, prior to the codification of common law maintenance under 720 ILCS 5/32-12, "champerty," "barratry" and "maintenance" were used interchangeably and as associated causes of action (*i.e.* "champerty and maintenance"). "While the common-

11

agreement to divide the proceeds of litigation." *Wyman-Gordon Co. v. Lynch Area Fire Prot. Dist.*, 51 Ill. App. 3d 451, 455 (4th Dist. 1977).

The Defendant has failed to do anything other than speculate as to the existence of a contract between A&H and the Plaintiff, and that simply, as a matter of Illinois law, is not enough, whether it be older common law, or newer standard that is applied. Similarly, it is well accepted that enactment of the Bankruptcy Code has merged judicial powers previously exercised under the common law so that they are no longer practicable in bankruptcy law. *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988). As there is no cognizable claim for champerty under the Bankruptcy Code, as with Illinois law, such a claim is simply not separately actionable as a matter of bankruptcy law.

The Defendant is not, therefore, entitled to use champerty as a blanket defense to the Complaint. To quote from *Miller*, "Abraham Lincoln once was asked how many legs a donkey has if you call its tail a leg. His answer was four: calling a tail a leg does not make it one." 17 F. Supp. 3d at 729-30 (*citing Blue Cross Blue Shield of Mass., Inc. v. BCS Insurance Co.*, 671 F.3d 635 (7th Cir. 2011)).

Similarly, common law "maintenance" was abolished by statute and remains codified in 720 ILCS 5/32-12. *Miller*, 17 F. Supp. 3d at 725.

> If a person officiously intermeddles in an action that in no way belongs to or concerns that person, by maintaining or assisting either party, with money or otherwise, to prosecute or defend the action, with a view to promote litigation, he or she is guilty of maintenance.

720 ILCS 5/32-12.

Officious intermeddling has been characterized as "useless" or "meritless" litigation for the purpose of harassment. *Miller*, 17 F. Supp. 3d at 725 (*quoting Medallion Prods., Inc. v. H.C.T.V., Inc.*, No. 06 C 2597, 2007 WL 1022010, at *4 (N.D. Ill. Mar. 29, 2007); *In re Marriage of Malec*, 205 Ill. App. 3d 273, 289 (1st Dist. 1990)).

The *Miller* court emphasized that as a criminal statute, maintenance should be narrowly read and applied with the intent of the legislature, and that the consistent trend across the country is to limit the application of champerty. 17 F. Supp. 3d at 725, 727 (*citing Del Webb Cmtys. v. Partington*, 652 F.3d 1156 (9th Cir. 2011)).

The Defendant has not demonstrated that the Plaintiff's actions in this case fall within the narrow interpretation required under the statute. He concludes, instead, that "the totality of [the

---

law crime of champerty has not been abolished by statute in this State, the tendency of decisions is to depart from the severity of the old law and at the same time to preserve the principle which tends to defeat the mischief to which the old law was directed, namely, 'the traffic of merchandizing in quarrels, of huckstering in litigious discord.'" *Berlin v. Nathan*, 64 Ill. App. 3d 940, 956, (1st Dist. 1978) (*quoting Milk Dealers Bottle Exch. v. Schaffer*, 224 Ill. App. 411, 415 (1st Dist. 1922)). As a general principle "[c]auses of action for maintenance and champerty were supplanted by causes of action for malicious prosecution and abuse of process, frivolous litigation statutes, and rules of professional conduct for attorneys, and thus were no longer recognized as viable causes of action." 14 Am. Jur. 2d Champerty, Maintenance, Etc. § 1.

Plaintiff's] actions are against public policy in Illinois." Reply, at 7. From what the court can determine, the Defendant's conclusion rests solely on speculation, specifically, the assumption that "there is no logical reason why this assignment would be made but for the fact that the Plaintiff has litigated other claims for a fraction of the cost due to his status as a *pro se* litigant." *Id.* at 7-8.

To bolster this argument, the Defendant states that A&H filed the State Court Action in 2009 *pro se*, prior to employing Sanders who then retired in 2013.[6] Amended Motion to Dismiss, at 2-3. The Defendant argues that, when viewed alongside the totality of the evidence linking the Plaintiff to A&H described herein, this fact indicates that the Plaintiff has acted on behalf of A&H in the past and is currently acting on behalf of A&H in this matter. The Defendant surmises that the most plausible reason why A&H did not initially pursue the State Court Action through a licensed attorney and has chosen not to pursue the Judgment in this matter was that A&H was "unable or unwilling to pay the costs," therefore, A&H made the Assignment to the Plaintiff to avoid attorneys' fees. Reply, at 7. Without anything else to support his conclusion, the Defendant alleges that "the Plaintiff informed the [a]ssignor that he would do it [litigate the claim] and by agreeing to receive any proceeds in consideration of undertaking the risk to carry the litigation." *Id.*

The unsubstantiated and threadbare nature of such an assertion reflects the frailty of the Defendant's argument, and is insufficient to overcome the Defendant's initial burden as movant, let alone overcome the inferences and reasonable probability standard applicable to the Plaintiff. Collectively, the Defendant's arguments as to champerty and maintenance therefore fail.

D. <u>Historical Pattern of Practicing Law Without a License; Other Considerations</u>

Having considered the Defendant's chief arguments, the court now turns to a theme that is pervasive throughout the Defendant's oral and written arguments: that the Plaintiff is a serial practitioner of law without a license, and therefore, even if the Defendant has failed to show that such alleged conduct happened here, the Plaintiff should nonetheless be punished here. This argument, in actuality, forms the basis of most of the Defendant's claims. Yet, in and of itself, such an argument presents no cognizable request for relief. The Plaintiff is either doing wrong here, or no remedy can be afforded. Certainly, should it be shown for the purpose of guidance that a borderline practice was previously sanctioned or that a small piece of a larger puzzle exists here that can only be understood in a larger context, it might be possible for the Defendant to succeed here on less than a full showing. But in examining the Defendant's claims, that simply is not the case here.

The Defendant has presented a holistic investigation of the Plaintiff's personal, professional and litigious history. In addition to the record in this case, the Defendant points to: matters currently or previously pending before this and other courts; circumstantial evidence linking the Plaintiff to several entities involved in such proceedings; and individual acts performed by the

---

[6] The Defendant has failed to provide documentation from the State Court Action other than a copy of the order entered by the Circuit Court of Cook County granting A&H's motion to reconsider the monetary award. Such order lists Sanders as A&H's counsel, which of course does not support the Defendant's assertion that it was the Plaintiff who was acting as counsel in the matter. Whether or not Sanders had retired prior to A&H's motion to reconsider, and was therefore practicing law without a license, the Defendant has failed to connect Sanders's actions to the Plaintiff's in this matter.

Plaintiff that the Defendant alleges demonstrate the Plaintiff's inclination to practice law without a license. The court will examine these elements in turn.

The Defendant presents evidence of personal connections between the Plaintiff, Bailey (the Plaintiff's wife) and Jackson, in their respective capacities as officers of entities such as Concerned Citizens, Inc. ("Concerned Citizens") and Mother's Touch Home Heath ("Mother's Touch"). The Defendant presents corporate filings and online searches showing shared addresses between the individuals and entities, as well as a laundry list of litigation and a cadre of isolated acts which the Plaintiff has performed individually and on behalf of such entities.

With respect to Concerned Citizens, the Defendant offers the Concerned Citizens Articles of Incorporation filed in 1992, which shows the Plaintiff as both registered agent and director, alongside Bailey and Jackson. Reply Ex. B. Other exhibits show that the Plaintiff was named as an owner of Concerned Citizens in a previous state court lawsuit and that the Plaintiff was listed as Executive Director of Concerned Citizens on a Yellow Pages web search. Amended Motion to Dismiss Exs. L & K. In response, the Plaintiff has here, as in other situations, offered explanations that, while not always entirely convincing, have not been countered by the Defendant (*e.g.*, testifying at the Hearing that though he was an original incorporator of Concerned Citizens, he has not had any involvement with the entity since 2004 and stating in his Response, that he "is not now an officer, agent or employee of A&H or Concerned Citizens"). Tr. 22, April 15, 2015; Response ¶ 17.

As to the Plaintiff's involvement with Mother's Touch, the Defendant points to a lease executed by the Plaintiff on behalf of Mother's Touch, as well as testimony that the Plaintiff delivered at a previous trial that Mother's Touch always paid its rent on time. Amended Motion to Dismiss Ex. G. At the Hearing, the Plaintiff denied that he is an officer or employee of Mother's Touch and further stated that he was authorized to execute the lease on behalf of Mother's Touch by agents of that entity. Tr. 14-15, April 15, 2015; Response ¶ 9. Such acts by an agent are expressly permitted under Illinois law and therefore cannot stand to show that the Plaintiff was practicing law in doing them.[7]

The Defendant also offers a video clip dated October 29, 2009 and shown on Fox News Chicago. Reply Ex. C. In the clip, though referred to repeatedly as "Mother's House," the agency being investigated was, per a sign on the door, Mother's Touch. A notice in the name of Concerned Citizens was also visible at the premises. The Plaintiff is featured in the clip, at the agency office and speaking on behalf of Mother's Touch. Yet the Plaintiff is not identified in relation to Mother's Touch, but instead is identified as a political worker and a field director for Dorothy Brown's election campaign.

---

[7] "A party to a contract need not personally participate in its formation where he is represented by an agent. An agent may bind his principal contractually upon proof of the agency relationship and proof that the agent had authority to bind his principal in contract. Knowledge of the agent relative to the transaction is imputed to his principal." *Bull v. Mitchell*, 114 Ill. App. 3d 177, 187 (3d Dist. 1983) (*citing* 1 Restatement (Second) of Agency § 140); *see also Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 857 (1st Dist. 1998) (*citing Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.*, 218 Ill. App. 3d 383, 390 (1st Dist. 1991) (apparent authority is cognizable when a principal, through words or conduct, creates the reasonable impression in a third party that his agent is authorized to perform a certain act on his behalf)). Being an agent with respect to such a transaction does not make the Plaintiff Mother's Touch's agent for all matters.

While this does tend to establish a relationship between the Plaintiff and Mother'sTouch/ Concerned Citizens (at least in 2009 when the video was filmed), it does not directly relate to the matter before the court, other than to call into question the veracity of the Plaintiff and his denial of an officer/agent relationship. This doesn't, however, help with the question of the Plaintiff's relationship to A&H, except only tangentially.

The Defendant directs the court's attention to a similar nondischargeability action pending before this court involving Mother's Touch, as an example of the Plaintiff's alleged propensity to use the above corporate entities to obtain assignments for the purpose of litigation.[8] In that matter, the underlying state court litigation involved claims by both Bailey and the Plaintiff. Those claims were asserted by the Plaintiff individually and Bailey individually as well as in her capacity as officer of Mother's Touch. Bailey later assigned her claim to the Plaintiff.

The Plaintiff argues that he had an independent claim against the defendant in that case as he was 50% owner of the property at issue and that it was presiding Judge Mulroy who suggested that the Plaintiff participate in the negotiation and global settlement of the cases involved in those proceedings. Amended Motion Ex. G; Response ¶ 22. As a result, based solely on the arguments here, it is difficult to conclude that those acts have any bearing to the matter at bar.

Still, the Defendant asserts that these are not isolated incidents. The Amended Motion to Dismiss includes exhibits showing that the Plaintiff has filed more than 10 *pro se* cases in Cook County, IL, at least two of which feature Bailey as co-plaintiff. Amended Motion to Dismiss Ex. F. In the Response, the Plaintiff denies that he is the same Hassan Muhammad who is party to the proceedings presented in the Defendant's exhibits, an assertion the Defendant has failed to counter. Without more, this denial is enough. It is not for the court to conduct independent research[9] and the Defendant provides nothing more than case information summaries generated by the Cook County Clerk of the Circuit Court, which, given the Plaintiff's statements, are inconclusive.

The Defendant also points to a blog entry posted by an individual stating that the Plaintiff had been assisting her "on a daily basis to become an attorney." Amended Motion to Dismiss Ex. N. This appears to be an attempt to demonstrate that the Plaintiff is holding himself out as some kind of legal authority or resource akin to the plaintiff in *Todd*. The argument is neither persuasive, nor well taken.[10] The Seventh Circuit emphasized in *Todd* that the plaintiff had effectively set up a business wherein he would provide legal advice and purchase claims for the purpose of litigation. *Todd*, 694 F.3d at 851-52. The plaintiff's overt solicitation of legal "clients" in that case clearly points to such a determination. Such facts are absent from the record in the case at bar.

The Defendant also takes issue with the Plaintiff's appearance before an administrative agency, the License Appeal Commission of the City of Chicago. The Defendant provides the court with an order of that agency stating that the Plaintiff had sent a letter to the Department of Business

---

[8] *Muhammad v. Sneed*, Adv. No. 14ap00098 (Bankr. N.D. Ill. filed Feb. 11, 2014).

[9] *See Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986) (it is not the obligation of this court to research and construct the legal arguments for the parties, especially when they are represented by counsel.).

[10] It is not, to the court's knowledge, necessary for one to be an attorney in order to assist others in becoming attorneys. *See generally* Lori K. Miller, The Non-Lawyer Educator Teaching Legal Issues in Higher Education: Legally and Educationally Defensible, 12 J. Legal Aspects of Sport 205 (Fall, 2002).

15

Affairs and Licensing explaining that he had been assisting certain petitioning parties in completing their liquor license applications. Amended Motion to Dismiss Ex. O.

At the Hearing, the court inquired as to whether a law license was necessary to appear in that forum, given that the Defendant's Brief states the Defendant's understanding that appearing before an administrative body may not require a law license. In response, the Plaintiff stated that he was employed by attorney Emmett J. Marshall ("Marshall"), "a third party who was engaged in facilitating licensing" for the parties involved and that he was authorized to appear before the liquor commission as long as he presented his driver's license and a letter provided by Marshall specifying the Plaintiff's limited authority as an agent/employee of Marshall. Tr. 10-13, April 15, 2015. The Plaintiff stated that he worked for Marshall for 4 years as a "runner" between the City of Chicago and other entities. Tr. 14, April 15, 2015.

The court found the Plaintiff's explanation in this matter to be consistent and perhaps the most convincing of those given. Nevertheless, the Defendant attempted to impune the Plaintiff's role in such proceedings as it related to Marshall, who became the subject of Attorney Registration & Disciplinary Commission disciplinary proceedings in 2009 and was later disbarred in 2012. Defendant's Brief, at 5. What later happened to Marshall has no impact on the court's analysis as the Plaintiff's interaction with the liquor commission occurred between 2007 and 2009. Any later disciplinary action against his employer has no bearing on the nature of the Plaintiff's conduct years earlier.

Last, the Defendant would have the court believe that the Plaintiff's legal acumen should be held against him. Legal experience and acumen of a *pro se* litigant does not make the litigant's actions *per se* unauthorized. That skill could be developed in any number of legitimate ways. To determine that proficiency in the adversarial process disqualifies layperson participation would be an irresponsible denial of due process as the *pro se* exception is an important feature of the legal system. Based solely upon the evidence presented, the court simply cannot conclude that the Plaintiff has abused the exception here.

Taking into account the totality of the circumstances, the Defendant has failed to satisfy his burden as the movant to show that the Plaintiff is impermissibly practicing law without a license in this matter. Following the First Motion to Dismiss and the Motion for Summary Judgment, the Amended Motion to Dismiss was the Defendant's third bite at the apple so to speak. Despite the volume of evidence presented, taking as true all well-pleaded factual allegations in the Complaint and making all possible inferences from the allegations in the Plaintiff's favor, the Defendant's conclusions have fallen short. By contrast, the Plaintiff has met his burden by providing sufficient evidence for the court to determine that a reasonable probability exists as to the Plaintiff's standing to pursue this matter. *Retired Chi. Police Assoc.*, 76 F.3d at 862. Given the unpersuasive nature of the arguments presented, any other determination would effectively deny the Plaintiff his ability to exercise the *pro se* exception.

The opportunity to appear before the court on one's own behalf is an integral part of due process. The court has not been convinced that such an extreme result is appropriate on the facts and arguments presented by the Defendant in this case. The court is simply not willing to take a "where there is smoke there is fire" approach when due process is at stake.

That said, though the nominal victor, it would be ill-advised for the Plaintiff to consider himself or his position entirely validated. The court's suspicions remain. The court strongly

16

cautions the Plaintiff that now that the issue has been raised in this court, it likely will be raised in others where the movant may do more to carry its burden than was done here.

## CONCLUSION

For the foregoing reasons, the Defendant's Amended Motion to Dismiss must be denied. Though the court has not been entirely convinced that the Plaintiff is indeed acting within the purpose and confines of the *pro se* exception and overarching public policy, the Plaintiff has met and the Defendant has failed to meet the burden applicable here.

A separate order will be issued concurrent with this Memorandum Decision.

Dated: June 22, 2015

Timothy A. Barnes
United States Bankruptcy Judge