UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Byron F. Reed, | ) | Case No. 13bk30975 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| ————————————————— | ) | |
| | ) | |
| Hassan A. Muhammad, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 13ap01294 |
| v. | ) | |
| | ) | |
| Byron F. Reed, | ) | Judge Timothy A. Barnes |
| | ) | |
| Defendant. | ) | |
| ————————————————— | ) | |

TIMOTHY A. BARNES, Judge

MEMORANDUM DECISION

The matter before the court arises out of the Complaint Objecting to the Discharge of Debt Owed to A&H Caring Connections, Inc. [Adv. Dkt. No. 1] (the "Complaint"), filed by Hassan A. Muhammad (the "Plaintiff") in the above-captioned adversary proceeding (the "Adversary"), seeking a determination of dischargeability of debt under section 523(a) of the Bankruptcy Code (as defined below) against the debtor, Byron F. Reed (the "Debtor"), and also objecting to the discharge of the Debtor under section 727(a) of the Bankruptcy Code.

More specifically, the Complaint asserts several causes of action, some of which are numbered as counts, and some of which are not.  Given that the Plaintiff is *pro se*, the court has examined the Complaint and has concluded that the Plaintiff is actually seeking only two independent causes of action.  First, the Plaintiff is seeking a determination that a debt owed to the Plaintiff, which arose out of a state court judgment that was rendered against the Debtor, is nondischargeable under sections 523(a)(2) and (a)(6).  Second, the Plaintiff is seeking a determination that the Debtor is not entitled to a discharge under sections 727(a)(4) and (a)(5) because the Debtor allegedly failed to disclose income from his businesses on his bankruptcy petition and purposely avoided disclosing his ownership of one such entity, by transferring his ownership interest in the business to his wife in order to avoid disclosing the same on his bankruptcy petition.

For the remainder of this Memorandum Decision, the court will discuss these two independent causes of action but will not reference the Plaintiff's counts specifically as they are set forth in the Complaint because the counts mix concepts in a misleading manner.[1]

The matter was tried before the court in a two-day trial that took place on September 1, 2015 and September 2, 2015 (the "Trial"). For the reasons set forth herein, the court holds that the debt owed to the Plaintiff is dischargeable by the Debtor and the Debtor is entitled to a discharge.

This Memorandum Decision constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). A separate order will be entered pursuant to Bankruptcy Rule 9021.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A proceeding for determination of the dischargeability of a particular debt only may arise in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(I); *Birriel v. Odeh (In re Odeh)*, 431 B.R. 807, 810 (Bankr. N.D. Ill. 2010) (Wedoff, J.); *Baermann v. Ryan (In re Ryan)*, 408 B.R. 143, 151 (Bankr. N.D. Ill. 2009) (Squires, J.). An objection to a debtor's discharge may only arise in a case under title 11 and is also specified as a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (J); *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004); *Hunt v. O'Neal (In re O'Neal)*, 436 B.R. 545, 550 (Bankr. N.D. Ill. 2010) (Schmetterer, J.).

While none of the parties have raised the issue of whether this court has constitutional authority to enter a final judgment on all counts of the Complaint in light of the United States Supreme Court's decision in *Stern v. Marshall*, 564 U.S. ---, 131 S. Ct. 2594 (2011), this court has an independent duty to determine whether it has such authority. *Rutkowski v. Adas (In re Adas)*, 488 B.R. 358, 379 (Bankr. N.D. Ill. 2013) (Hollis, J.).

The counts in the Complaint are based on sections 523(a)(2)(A), 523(a)(6), 727(a)(4) and 727(a)(5) of the Bankruptcy Code. Sections 523 and 727 are unequivocally bankruptcy causes of

---

[1]   "Allegations of a *pro se* complaint are held 'to less stringent standards than formal pleadings drafted by lawyers…' Accordingly, *pro se* complaints are liberally construed." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (*quoting Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*)); *see also Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988).

action. While such actions may turn on state law, determining the scope of a debtor's discharge is a fundamental part of the bankruptcy process. *See Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 20 (B.A.P. 9th Cir. 2012). As observed by one bankruptcy court, "there can be little doubt that [a bankruptcy court], as an Article I tribunal, has the constitutional authority to hear and finally determine what claims are non-dischargeable in a bankruptcy case." *Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011); *see also Deitz*, 469 B.R. at 20; *White Eagle, Inc. v. Boricich (In re Boricich)*, 464 B.R. 335, 337 (Bankr. N.D. Ill. 2011) (Schmetterer, J.). A bankruptcy court also has the constitutional authority to enter final judgment on an objection to a Debtor's discharge in a bankruptcy case. *Wellness Intern. Network, Ltd. v. Sharif*, 727 F.3d 751, 773 (7th Cir. 2013), *rev'd on other grounds*, 135 S. Ct. 1932.

There is therefore no question as to the court's authority to hear and determine nondischargeability of a debt and discharge of a debtor. *See generally Stern*, 564 U.S. ---, 131 S. Ct. 2594.

Accordingly, final judgment is within the scope of the court's authority.

PROCEDURAL HISTORY

In considering the relief sought by the Plaintiff, the court has considered the evidence and argument presented by the parties at the Trial, has reviewed the Complaint, the attached exhibits submitted in conjunction therewith, and has reviewed and found each of the following of particular relevance:

(1) Debtor's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Adv. Dkt. No. 4];

(2) Plaintiff's Motion for Default [Adv. Dkt. No. 11];

(3) Order Withdrawing Debtor's Motion for Entry of Default [Adv. Dkt. No. 15];

(4) Plaintiff's Response to Debtor's Motion to Dismiss [Adv. Dkt. No. 18];

(5) Debtor's Reply in Support of His Motion to Dismiss and, in the Alternative, Response to Plaintiff's Motion for Summary Judgment, and supporting documents [Adv. Dkt. Nos. 21-24];

(6) Order Denying Debtor's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Adv. Dkt. No. 29];

(7) Plaintiff's Motion for Default [Adv. Dkt. No. 30];

(8) Debtor's Answer and Affirmative Defenses to Plaintiff's Complaint Objecting to Discharge of Debt [Adv. Dkt. No. 37];

(9) Order Denying for the Reasons Stated on the Record Plaintiff's Motion for Entry of Default [Adv. Dkt. No. 40];

(10) Debtor's Motion for Summary Judgment Pursuant to Rule 7056-1 of the Federal Rules of Bankruptcy Procedure, and supporting documents [Adv. Dkt. Nos. 43-48];

(11) Plaintiff's Response to Motion for Summary Judgment [Adv. Dkt. No. 55];

(12) Debtor's Motion to Strike Plaintiff's Response to Debtor's Motion for Summary Judgment and Reply in Support of Debtor's Motion for Summary Judgment [Adv. Dkt. No. 57];

(13) Order Denying Debtor's Motion for Summary Judgment Pursuant to Rule 7056-1 of the Federal Rules of Bankruptcy Procedure [Adv. Dkt. No. 60];

(14) Plaintiff's Motion to Amended [sic] Complaint to Add Parties and Causes of Action [Adv. Dkt. No. 63];

(15) Order Denying Plaintiff's Motion to Amend Complaint to Add Parties and Causes of Action [Adv. Dkt. No. 66];

(16) Agreed-to Status Report [Adv. Dkt. No. 67] (the "Agreed-to Status Report");

(17) Final Pretrial Order Governing Complaint Objecting to Debtor's Discharge and Dischargeability of Particular Debt [Adv. Dkt. No. 70] (the "Final Pretrial Order");

(18) Amended Pretrial Order Governing Complaint Objecting to Debtor's Discharge and Dischargeability of Particular Debt [Adv. Dkt. No. 82] (the "Amended Final Pretrial Order");

(19) Plaintiff's Motion to Compel and/or for Sanctions [Adv. Dkt. No. 88];

(20) Order Withdrawing Plaintiff's Motion to Compel and/or for Sanctions [Adv. Dkt. No. 95];

(21) Plaintiff's Objections, Motion to Strike and/or Sanctions [Adv. Dkt. No. 96];

(22) Plaintiff's Objections, Motion to Strike and/or Sanctions [Adv. Dkt. No. 98];

(23) Plaintiff's Objections and Motion for Sanctions [Adv. Dkt. No. 99];

(24) Order Mooting Plaintiff's Motion to Strike and Motion for Sanctions [Adv. Dkt. No. 106];

(25) Plaintiff's Objections to Debtor's Objections to Plaintiff's Interrogatories and Production Requests and Motion for Sanctions [Adv. Dkt. No. 117];

(26) Plaintiff's Motion to Strike and Deem Facts Admitted [Adv. Dkt. No. 118];

(27) Plaintiff's Motion to Strike and Deem Facts Admitted [Adv. Dkt. No. 121];

(28) Debtor's Amended Motion to Dismiss Pursuant to Rule 15 of the Federal Rules of Civil Procedure [Adv. Dkt. No. 122];

(29) Order Mooting Plaintiff's Motion to Strike [Adv. Dkt. No. 131];

(30)  Order Mooting Plaintiff's Motion for Sanctions [Adv. Dkt. No. 132];

(31)  Debtor's Response to Objections to Debtor's Objections to Plaintiff's Interrogatories and
      Production Requests and Motion for Sanctions [Adv. Dkt. No. 134];

(32)  Plaintiff's Response to Debtor's Motion to Dismiss [Adv. Dkt. No. 136];

(33)  Debtor's Reply to Plaintiff's Response to the Amended Motion to Dismiss [Adv. Dkt. No.
      138];

(34)  Plaintiff's Reply to Debtor's Response to Plaintiff's Motion to Compel [Adv. Dkt. No. 140];

(35)  Court's Memorandum Opinion Denying Debtor's Motion to Dismiss Adversary
      Proceeding [Adv. Dkt. No. 150];

(36)  Order Denying Debtor's Amended Motion to Dismiss Pursuant to Rule 15 of the Federal
      Rules of Civil Procedure [Adv. Dkt. No. 151];

(37)  Order Denying Plaintiff's Motion to Strike [Adv. Dkt. No. 156];

(38)  Plaintiff's Motion for Default[2] [Adv. Dkt. No. 167];

(39)  [Joint] Pretrial Statement [Adv. Dkt. No. 168] (the "Joint Pretrial Statement");

(40)  Debtor's Motions in Limine [Adv. Dkt. No. 170] (the "Motions in Limine");

(41)  Debtor's Response to Plaintiff's Motion for Default [Adv. Dkt. No. 172];

(42)  Debtor's Answer and Affirmative Defenses to Plaintiff's Complaint Objecting to Discharge
      of Debt [Adv. Dkt. No. 174];

(43)  Plaintiff's Response to Motion in Limine [Adv. Dkt. No. 175]; and

(44)  Debtor's Reply to Plaintiff's Response to Debtor's Motions in Limine Pretrial [Adv. Dkt.
      No. 177].

Though the foregoing items do not constitute an exhaustive list of the filings in the
Adversary, the court has taken judicial notice of the contents of the docket in this matter. *See Levine
v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court
to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989)
(Goldgar, J.) (recognizing same).

---

[2]      At the Trial, the Plaintiff stated that this was filed in error, and the court subsequently denied the
motion. Tr. 4, Sept. 1, 2015.

## BACKGROUND

The case at bar turns on two different, but related, sets of facts. The first encompasses the relationship between the Plaintiff and the Debtor before the commencement of the bankruptcy. The second pertains to alleged inactions of the Debtor as a debtor in the bankruptcy once commenced, but nonetheless in relation, at least in part, to the Plaintiff.

Prior to the commencement of the Debtor's bankruptcy case, the Debtor was (and remains) a licensed medical doctor who operated a series of medical service businesses in and around the city of Chicago. The Debtor's businesses were predicated on the Debtor acting as the primary provider of medical care. Some of these businesses (e.g., Silver E.D.G.E. and Norybdeer Ltd.) were used primarily for billing purposes.

The Plaintiff and his wife similarly created and operated medical care facilities, though neither the Plaintiff nor his wife is a licensed medical care provider. Instead, they created entities through which the facilities operated, such as the one at issue here, A&H Caring Connections, Inc. ("A&H"). Because neither the Plaintiff nor his wife is individually a licensed medical care provider, they relied on physicians such as the Debtor to actually provide the medical care at their facilities.

Due to the related nature of their businesses and common interests in their communities, church involvement and local politics, it is not surprising, therefore, that both a friendship and a business relationship developed. The friendship lasted for at least a decade, but ended when the business relationship soured. It is the collapsing of that business relationship that is the impetus behind the Plaintiff's Complaint.

This business relationship appeared consistent with the Plaintiff's other dealings. As noted above, A&H relied on physicians to provide medical services, and perhaps more importantly, to bill insurance and state and federal agencies for the services provided. In 2007 and 2008, A&H entered into an agreement with the Debtor, wherein A&H would recruit, enroll, and provide administrative services for patients, and the Debtor would provide medical care as a licensed medical doctor. Both parties also agreed that the Debtor was to send the bill for the medical services rendered to insurance companies, and then upon reimbursement from the insurance companies, pay A&H in accordance with an agreed upon cost per unit of service. The Debtor provided medical services to A&H for more than a year, but failed to reimburse A&H per their agreement.

On January 27, 2009, A&H sued the Debtor in the Circuit Court of Cook County, Illinois (the "State Court") in case no. 09L00930 for breach of contract, tortious interference with prospective economic advantage, and fraud (the "State Court Litigation"). The State Court entered a monetary judgment in the amount of $50,000.00 in favor of A&H and against the Debtor on March 27, 2012. The State Court judge awarded A&H for work billed (including lost profits) and denied A&H's request for punitive damages. However, the State Court did not address the question of fraud. A&H filed a motion to reconsider the monetary award and it was granted on July 24, 2012, which increased the judgment to $412,622.00 (the "State Court Judgment").

On August 2, 2013, the Debtor filed a voluntary petition for bankruptcy under chapter 7 of the Bankruptcy Code after experiencing financial difficulties including the State Court Judgment. In the bankruptcy case, among other things, the Debtor filed a Statement of Financial Affairs (the "SOFA") with his bankruptcy petition and listed no income in 2013 from any of Debtor's

businesses to the date of the petition. The Debtor also filed a Statement of Current Monthly Income and Means Test Calculation on August 2, 2013, which also indicated zero monthly income.

On September 17, 2013, A&H filed a proof of claim in the Debtor's bankruptcy case in the amount of $412,587.00 for the unpaid amount of the State Court Judgment. On September 23, 2013, the Chapter 7 Trustee filed a report of no distribution, which certified that the Debtor had no assets, had claims scheduled in the amount of $436,549.58, and had claims scheduled to be discharged in the amount of $436,549.58. The president of A&H assigned A&H's interest to the Plaintiff, giving him standing to litigate the claim *pro se*. On November 8, 2013, Plaintiff commenced this Adversary seeking to have the court deem the judgment debt nondischargeable under sections 523(a)(2)(A) and (a)(6) because the debt is allegedly a result of willful fraud and deceptive practices, and also find that the Debtor is not entitled to a discharge under sections 727(a)(4) and (a)(5) because the Debtor allegedly failed to disclose income and concealed two businesses (Silver E.D.G.E. and Norybdeer Ltd.) in which he had ownership interests.

As previously stated by the court, these proceedings have been extremely litigious in nature. *See Muhammad v. Reed (In re Reed)*, 532 B.R. 82, 87 (Bankr. N.D. Ill. 2015) (Barnes, J.). The documents and oral testimony offered by the parties are laden with evidence of their acerbic rapport, prompting the court to issue stern warnings regarding compliance with discovery. *Id.*

The Trial was held on September 1, 2015 and September 2, 2015. The court heard the arguments of the parties and took the matter under advisement.

## EVIDENTIARY RULINGS

Prior to the Trial, the court issued a Final Pretrial Order and an Amended Final Pretrial Order, both of which stated that any exhibit to which an objection was not raised in the parties' Joint Pretrial Statement would be received in evidence without an offer during the Trial. The parties subsequently submitted their Joint Pretrial Statement.

At the Trial, the court considered the Debtor's Motions in Limine, where the Debtor sought to bar the Plaintiff's witnesses and exhibits that were listed in the Joint Pretrial Statement. The Debtor asserted that all of the Plaintiff's ten witnesses and most of the Plaintiff's 34 exhibits[3] should be barred from being admitted into evidence because they were not properly and/or timely disclosed pursuant to the Federal Rules of Civil Procedure 26(a) and 26(e), and because the Plaintiff failed to describe with reasonable particularity the matters for testimony. In the alternative, the Debtor sought dismissal under Federal Rule of Civil Procedure 27(c)(1)(C) for the same reasons. The Debtor also raised objections to the Plaintiff's proposed witnesses and exhibits under the Federal Rules of Evidence with respect to relevance, personal knowledge, authenticity, and on grounds that such testimony impermissibly represented an opinion and/or ultimate conclusion.

The Agreed-to Status Report entered in this proceeding required the parties to submit their initial disclosures pursuant to the Federal Rule of Civil Procedure 26(a) (the "Rule 26 Disclosures") by August 14, 2014, and complete written discovery by October 16, 2014. The Plaintiff argued that

---

[3] The Debtor did not raise objections to the Plaintiff's Exhibits Nos. 9, 17, 23, 27, 30 and 32.

he submitted his Rule 26 Disclosures to the Debtor's prior counsel[4] on October 13, 2014, via email prior to the termination of written discovery on October 16, 2015. The Plaintiff's Rule 26 Disclosures contained only five of the ten witnesses that he later listed in the Joint Pretrial Statement. While the Plaintiff submitted his Rule 26 Disclosures within the written discovery deadline, those disclosures, however, were submitted after the August 14, 2014 deadline for initial disclosures. Despite the Plaintiff's failure to meet the initial disclosures deadline, the Plaintiff did meet the written discovery deadline of October 16, 2014, which had the effect of putting the Debtor on notice as of October 13, 2014, for five of the witnesses that the Plaintiff listed in the Joint Pretrial Statement. In addition, the Debtor's counsel failed to raise an objection as to these five witnesses during discovery, as was required by the Final Amended Pretrial Order.

While it would be well within the court's authority to exclude all of the Plaintiff's witnesses and exhibits based on the Plaintiff's failure to comply with Federal Rule of Civil Procedure 26 by submitting Rule 26 Disclosures by the August 14, 2014 deadline, given the ultimate resolution of this matter, the court is tasked with ensuring that its actions are not prejudicial to the Plaintiff, as he is litigating *pro se*.[5]

As a result, the court denied the Debtor's Motions in Limine with respect to the five witnesses that the Plaintiff listed in the Joint Pretrial Statement that were previously disclosed to the Debtor's prior counsel in the Rule 26 Disclosures, having the effect of permitting them to testify at the Trial,[6] but granted the Debtor's Motions in Limine with respect to the five witnesses that were not previously disclosed by the Plaintiff as was required by the Agreed-to Status Report, having the effect of barring such five witnesses from testifying in court.

Finally, the court granted most of the Debtor's Motions in Limine with respect to the Plaintiff's 34 exhibits, but permitted the Plaintiff to use ten exhibits for impeachment purposes,[7] and reserved ruling on eight exhibits.[8] During the Trial, the Plaintiff failed to properly use any of the ten

---

[4]     The Debtor was originally represented by Aleksandar Djordjevich, who filed an appearance on behalf of the Debtor on April 1, 2014 [Adv. Dkt. No. 31]. Mr. Djordjevich left the firm during the pendency of the Adversary. Tr. 12, Sept. 1, 2015.

[5]     *See Alvarado*, 267 F.3d 651. Further, the Debtor has failed to articulate the harm in accepting the October 13, 2014 disclosures. The same cannot be said of the five additional witnesses proposed by the Plaintiff on the eve of the Trial. The law is clear with respect to such late tactics that they are inappropriate and prejudicial. *See In re Spanjer Bros., Inc.*, 191 B.R. 738, 746. (Bankr. N.D. Ill. 1996) (Squires, J.).

[6]     Only three of the five witnesses that were permitted, as a result, to testify actually testified at the Trial.

[7]     Plaintiff's Request for Admission of Facts and Genuineness of Documents (Plaintiff's Exhibit No. 15); Debtor's Answers to Plaintiff's Request for Admission of Facts and Genuineness of Documents (Plaintiff's Exhibit No. 16); Requests upon Norybdeer Ltd. To Produce (Plaintiff's Exhibit No. 18); Norybdeer Ltd.'s Answers to Production Request (Plaintiff's Exhibit No. 19) Norybdeer Ltd. Answers to Requests to Admit (Plaintiff's Exhibit No. 20); List of Businesses Where Debtor Performed Work (Plaintiff's Exhibit No. 28); Illinois Department of Financial Regulation Physician Profile (Plaintiff's Exhibit No. 29); Income and Compensation Projections (Plaintiff's Exhibit No. 31); Client-listing Fox River (Plaintiff's Exhibit No. 33); and Schedule- Fox River (Plaintiff's Exhibit No. 34).

[8]     Payment from State of Illinois and Wisconsin Physician Services (Plaintiff's Exhibit No. 8); Motion to Release Funds- from Medicare (Plaintiff's Exhibit No. 11); Order to release funds- from Medicare

exhibits for impeachment purposes. Also, despite the court's attempt to instruct the Plaintiff on how to properly lay the foundation to admit the remaining exhibits into evidence,[9] the Plaintiff was unsuccessful in asking his witnesses the proper questions to lay the foundation for exhibits to be admitted.

On the second day of the Trial, the Plaintiff admitted that he misunderstood the effect of the court granting the Debtor's Motions in Limine, namely that the exhibits were effectively excluded from evidence. The Plaintiff incorrectly believed that if he properly laid the foundation for these exhibits during the Trial then they could still be admitted into evidence.[10] The Plaintiff's admission clarified for the court why the Plaintiff attempted to admit exhibits that the court already granted Motions in Limine on. Nevertheless, the court gave the Plaintiff significant leeway in using exhibits for impeachment purposes and for introduction of exhibits for admittance into evidence throughout the Trial, even though the court already granted Motions in Limine with respect to some of these exhibits.

At the close of the Plaintiff's case-in-chief, the Plaintiff again sought to have exhibits that the court previously allowed him to use for impeachment purposes and exhibits that the court reserved ruling on to be admitted into evidence. The court, after hearing the Plaintiff's case-in-chief, continued to reserve ruling on the following of the Plaintiff's Exhibits: Payment from State of Illinois and Wisconsin Physician Services (Plaintiff's Exhibit No. 8),[11] Plaintiff's Request for Admission of Facts and Genuineness of Documents and Debtor's Answers to Plaintiff's Request for Admission of Facts and Genuineness of Documents (Plaintiff's Exhibits Nos. 15-16),[12] Requests Upon Norybeer Ltd. To Produce, Norybdeer Ltd.'s Answers to Production Request, and Norybdeer Ltd. Answers to Requests to Admit (Plaintiff's Exhibits Nos. 18-20),[13] and Debtor's Statement of Financial Affairs, Debtor's 2011 Tax Return, and Debtor's 2012 Tax Return (Plaintiff's Exhibits Nos. 24-26). Given the court's determination that the Debtor has failed to carry his case-in-chief whether or not these exhibits are admitted, it does no harm, therefore, to overrule Defendant's objections and permit the exhibits to be considered. As such, the court denies the Debtor's Motions in Limine with respect to these exhibits and considers them for the purposes of this Memorandum Decision.

At the conclusion of the Trial, the Debtor moved for a directed verdict. The court's ruling on the motion for directed verdict is subsumed into this Memorandum Decision.

---

(Plaintiff's Exhibit No. 12); Motion for Reconsideration (Plaintiff's Exhibit No. 13); Order reinstating the freezing of funds- from Medicare (Plaintiff's Exhibit No. 14); Debtor's Statement Of Financial Affairs (Plaintiff's Exhibit No. 24); Debtor's 2011 tax return (Plaintiff's Exhibit No. 25); and Debtor's 2012 tax return (Plaintiff's Exhibit No. 26).

[9]     Tr. 238, Sept. 2, 2015.

[10]    Tr. 222, Sept. 2, 2015.

[11]    For overall admissibility, in light of the Debtor's objections.

[12]    For the limited purpose and to the extent that these exhibits relate back to the Debtor's testimony.

[13]    For overall admissibility, in light of the Debtor's objections.

FINDINGS OF FACT[14]

As the nature of the proceedings was unduly acrimonious in nature,[15] the parties stipulated to only one fact in the Pretrial Statement, and listed a total of 38 material facts in dispute. A number of the facts in dispute should not have been disputed. For example, Norybdeer is unquestionably Byron Reed (or more precisely Reed Byron) spelled backwards. It is not the fact that could or should have been subject to a reasonable dispute. The parties have made the court's task, in this regard, exceedingly difficult.

Nonetheless, the review and consideration of the procedural background, as well as the evidence presented at the Trial (and in light of the court's evidentiary rulings above), the court determines the salient facts to be as follows, and so finds that:

A. The Parties

(1)   The Debtor is an individual domiciled in Chicago, Illinois.

(2)   For the past decade, the Debtor's primary business has been providing medical care as a licensed medical doctor through his own businesses as well as others, including A&H.

(3)   The Debtor operates Silver E.D.G.E. as a d/b/a, where he performs house calls for patients. Tr. 90, 93, Sept. 1, 2015.

(4)   The Debtor processes his billing through a medical billing company, Norybdeer Ltd. Tr. 93, Sept. 1, 2015. Norybdeer Ltd. has its own NPI number. Tr. 110, Sept. 1, 2015.

(5)   The Debtor has his own NPI number, which insurance companies use as a way to identify the services he provides in his capacity as a medical doctor. Tr. 110-11, Sept. 1, 2015.

(6)   The Plaintiff is an individual domiciled in Chicago, Illinois.

(7)   Over the past decade, the Plaintiff and the Debtor worked and collaborated together in social, business, and political capacities. Tr. 267, Sept. 1, 2015.

(8)   The various business relationships between the Plaintiff and the Debtor were not always reduced to writing.

---

[14]     To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such. Adjudicative facts may also be found and determined later in this Memorandum Decision.

[15]     On numerous occasions in this proceeding the court was requested to instruct the parties on matters of civility and professionalism. Matters involving *pro se* litigants are always challenging. However, the court had by luck of the draw two unrelated adversaries (including this one) where the Plaintiff acted as a *pro se* plaintiff. In the other adversary, these issues did not exist. The inevitable conclusion is that the issues in this matter were not, for the most part, the fault of the Plaintiff.

B.  <u>A&H Caring Connections, Inc.</u>

   (9)  Alice Jackson is the president of A&H.

   (10) Maria Bailey is Plaintiff's wife and the Vice President of A&H.  Tr. 199, Sept. 1, 2015.

   (11) A&H's board resolution gives Ms. Jackson the authority to assign A&H's beneficial interest
      to another.

C.  <u>State Court Litigation</u>

   (12) On January 27, 2009, A&H filed the State Court Litigation for breach of contract, tortious
      interference with prospective economic advantage, and fraud.

   (13) On March 27, 2012, judgment was entered against the Debtor in the State Court Litigation
      in the amount of $50,000.00.

   (14) The Debtor did not appeal the decision entered by the State Court.

   (15) The Plaintiff filed a motion to reconsider the monetary award, which was granted on July
      24, 2012, and the State Court increased the State Court Judgment to $412,622.00.

   (16) The State Court Judgment order provides:

*This cause coming on Plaintiff's Motion for Additure to Judgment Award with Plaintiff
Attending but Defendants not present and the court having heard all arguments IT IS
ORDERED: (1) Judgment for Plaintiff for work billed at (a) Concerned Citizens-
$118,263.00 (b) Fox River $256,124.00 (c) Warren Park $50,000.00 (2) Judgment
for Plaintiff for Loss Profits at Warden Park for 6 months- $43,235.00 (3) Judgment
for Punitive Damages Denied (4) Defendant to receive credit for $55,000 paid to
Plaintiff to date.*

*This is a final order of judgment against Byron Reed. Total net judgment against Byron
Reed $412,622.00.*

   (17) The State Court did not address the issue of fraud.

   (18) The State Court denied punitive damages against the Debtor.

   (19) On November 5, 2013, Alice Jackson executed an assignment of interests, which assigned
      the State Court Judgment against the Debtor to the Plaintiff.

D.  <u>Reed's Bankruptcy Petition</u>

   (20) The Debtor's SOFA lists income of $0.00 for 2013 from business to date, $57,583.00 for
      2012 from business; $43,664.00 for 2011 income from business.

   (21) Debtor's 2011 income tax return lists gross sales receipts of sales $145,632.00.

DISCUSSION

At the close of Plaintiff's case-in-chief, the Debtor's counsel moved for a directed verdict. The court reserved ruling on the Debtor's motion and directed the Debtor's counsel to present his case-in-chief. The court will base its analysis of the Debtor's motion for a directed verdict on whether the Plaintiff met his burden with respect to all of the elements of sections 727 and 523 of the Bankruptcy Code. First, the court will address the Plaintiff's arguments on the part of the Debtor under sections 727(a)(4) and (a)(5). Then the court will discuss the Plaintiff's arguments with respect to nondischargeability of a debt under sections 523(a)(2) and (a)(6). Based on the court's analysis, the court will render its ruling with respect to the Debtor's motion for a directed verdict. However, in reviewing the Complaint the Plaintiff's case-in-chief, it is evident to the court that the Plaintiff has intertwined and confused the elements of sections 727 and 523. As the law is clear that the court should attempt to look through the pleading deficiencies of a *pro se* plaintiff,[16] the court has done its best to match relevant facts with the proper elements of sections 727 and 523, despite the Plaintiff's pleading deficiencies.

A.    Section 727 Causes of Action

The Bankruptcy Code provides debtors with a discharge to give honest but unfortunate debtors a financial "fresh start." *In re Chambers*, 348 F.3d 650, 653 (7th Cir. 2003); *Vill. Of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). The party objecting to a debtor's discharge bears the burden of proof. Fed. R. Bankr. P. 4005; *see Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966 (7th Cir. 1999). The objecting party must meet this burden by a preponderance of the evidence. *Scott*, 172 F.3d at 966-67. To advance the policy of providing a debtor a fresh start, objections to a debtor's discharge are to be construed strictly against movants and liberally in favor of a debtor. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996). "The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor." *Soft Sheen Prods., Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (Squires, J.).

1.    11 U.S.C. § 727(a)(4)

Section 727(a)(4)(A) of the Bankruptcy Code provides that the court shall not grant the debtor a discharge if the debtor knowingly and fraudulently, in or in connection with the bankruptcy case made a false oath or account. 11 U.S.C. § 727(a)(4)(A).

To prevail on a denial of discharge under section 727(a)(4)(A), it must be proven that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011); *see also Rutili v. O'Neill (In re O'Neill)*, 468 B.R. 308, 327 (Bankr. N.D. Ill. 2012) (Schmetterer, J.) (substituting "fraudulent intent" with "an intent to deceive").

Under section 727(a)(4)(A), not only must a debtor have knowingly made false statements or omissions, they must have been made – or omitted – with fraudulent intent. A debtor's petition,

---

[16]    *See supra* note 1.

schedules, statement of financial affairs, statements made at a section 341 meeting, testimony given at a Bankruptcy Rule 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of section 727(a)(4)(A). *Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 245 (Bankr. N.D. Ill. 2005) (Squires, J.); *John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004) (Schmetterer, J.).

When determining intent, however, the court should consider the debtor's whole pattern of conduct. *In re Yonikus*, 974 F.2d 901, 905-06 (7th Cir. 1992); *Rezin v. Barr (In re Barr)*, 207 B.R. 168, 176 (Bankr. N.D. Ill. 1997) (Schmetterer, J.). Intent to deceive may be established through direct evidence or inference, *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004) (Schmetterer, J.) (*citing In re Sheridan*, 57 F.3d 627 (7th Cir. 1995)), and because a debtor is unlikely to testify that his intent was fraudulent, the court may deduce such intent from all the facts and circumstances of a case, *Filmar, Inc. v. White (In re White)*, 63 B.R. 742, 744 (Bankr. N.D. Ill. 1986) (Eisen, J.).

To satisfy its burden under section 727(a)(4)(A), the Plaintiff must demonstrate to the court that the Debtor not only made a false oath, but also that the Debtor made the false oath with the requisite fraudulent intent. In particular, the Plaintiff must show that the Debtor omitted income from his businesses on his bankruptcy petition, that the Debtor knew he was misrepresenting income from his businesses, and the Debtor intentionally omitted income in order to deceive A&H. *See Stamat*, 625 F.3d at 978.

At the Trial, the Plaintiff attempted to show that the Debtor failed to disclose income that he allegedly received in 2011-2013 from Norybdeer Ltd. and Silver E.D.G.E. because of discrepancies between what the Debtor reported as income on his tax returns and what he listed as income on his SOFA. The Plaintiff did this by way of testimony from the Debtor. First, with respect to Norybdeer Ltd., the Plaintiff showed the court that in Schedule C, Line 7 of Part 1 of the Debtor's 2011 tax return, which lists profit and loss from business, the Debtor reported receipts of sales in the amount of $145,632.00. The Plaintiff pointed this out in an attempt to draw an inference with respect to the veracity of the Debtor by showing that the Debtor's SOFA lists $43,664.00 in income. The Debtor's counsel objected to the Plaintiff's allegations of misrepresentation of income and pointed out that the Debtor's Schedule C of his 2011 tax return also shows his net profit and loss for business on Line 31, which is consistent with the amount reported on the Debtor's SOFA.

The Plaintiff's argument fails to demonstrate how these allegations rise to the level of intent. *See Monroe*, 304 B.R. at 356. Even if the intent were there, the court is not convinced that the Debtor's stating his net profit and loss for business from Schedule C on Line 31 instead of his receipts of sales from business from Schedule C Line 7 is fraudulent. The court does not find the requisite fraudulent intent, so the Debtor's mistake is harmless and does not amount to a false statement under oath. *See Molfese & Carpet Serv. Int'l Inc., v. Bonomi (In re Bonomi)*, Adv. No. 13ap00119, 2014 WL 640982, at *8-9 (Bankr. N.D. Ill. Feb. 18, 2014) (Barnes, J.) (distinguishing *Stamat*, 625 F.3d at 978 and concluding that the plaintiff had not proven fraudulent intent where the debtor satisfactorily and credibly explained inaccurate schedules and offered full disclosure).

Thus, the Plaintiff has not met its burden with respect to section 727(a)(4)(A) and his objection to discharge fails in this respect.

2. 11 U.S.C. § 727(a)(5)

The Plaintiff contends that the Debtor has failed to satisfactorily explain a loss or dissipation of assets and should therefore be denied his discharge under section 727(a)(5), which provides that the court shall grant the debtor a discharge, unless:

> (5) the debtor has failed to satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

11 U.S.C. § 727(a)(5).

There are two stages of proof under section 727(a)(5). *Saluja v. Mantra (In re Mantra)*, 314 B.R. 723, 730 (Bankr. N.D. Ill. 2004) (Squires, J.) (*citing Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 955 (Bankr. N.D. Ill. 1995) (Schmetterer, J.)). First, the creditor has the initial burden "of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors." *Self*, 325 B.R. at 250. Second, after the creditor meets this initial burden, the burden then shifts to the debtor to satisfactorily explain the loss. *Id.* The court has the discretion to determine what constitutes a "satisfactory" explanation of the loss. *Nuvell Credit Corp v. Ross (In re Ross)*, 359 B.R. 690, 700 (Bankr. N.D. Ill. 2007) (Schmetterer, J.).

A bankruptcy court has "broad power to decline to grant a discharge…where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *Fed. Deposit Insurance Corp. v. Barrick (In re Barrick)*, 518 B.R. 453, 462 (Bankr. N.D. Ill. 2014) (Cassling, J.) (*citing First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 886 (7th Cir. 1983)). While the debtor's explanation does not need to be comprehensive, it must meet two criteria to be deemed "satisfactory." *Mantra*, 314 B.R. at 730. First, it must be supported by at least some documentation. *Id.* Second, the documentation must be sufficient to "eliminate the need for the Court to speculate as to what happened to all the assets." *Id.* The debtor's explanation must consist of more than "a vague, indefinite, and uncorroborated hodgepodge of financial transactions…" *Id.* (*citing Baum v. Earl Millikin, Inc. (In re Baum)*, 359 F.2d 811, 814 (7th Cir. 1966)). "Instead, it must be a good faith explanation of what really happened to the assets in question. *Olson v. Potter (In re Potter)*, 88 B.R. 843, 849 (Bankr. N.D. Ill. 1988) (Ginsberg, J.).

To succeed on this count, the Plaintiff must first prove that the Debtor owned "substantial and identifiable assets" that are no longer available for A&H. *See Self*, 523 B.R. at 250. The Plaintiff alleges in the Complaint that the Debtor collected more than $600,000.00 in reimbursements from providing services to at least 150 individuals per day from 2007-2008. At the Trial, the Plaintiff unsuccessfully attempted to prove this by asking the Debtor if he "provide[d] any patient care work between January and June of 2013 for which Medicare paid Norybdeer?"[17] The Debtor answered that he provided patient care, but did not know about receiving payment for his services.[18] It was evident to the court that the Plaintiff was struggling to ask the proper questions to meet his burden. On numerous occasions, the Plaintiff asked compounded and confusing questions, which in turn caused the Debtor to provide unclear responses.

---

[17]   Tr. 171, Sept. 1, 2015.

[18]   *Id.*

The Plaintiff also attempted to show that the Debtor received income from Silver E.D.G.E. in 2013 when the Plaintiff asked the Debtor in his direct testimony if Silver E.D.G.E. received a 1099 tax form in 2013.[19] The Debtor responded that he was "not sure."[20] Thereafter, the Plaintiff dropped that line of inquiry. As the Debtor's response was insufficient for the Plaintiff to prove that the Debtor received income from Silver E.D.G.E. that he failed to report on his bankruptcy petition, it was the Plaintiff's burden to press the issue, and he did not.

Taken together, the court finds that the Plaintiff has shown that the Debtor provided patient care in 2013 and that Silver E.D.G.E. may or may not have received a 1099 tax form in 2013. However, this is not enough for the Plaintiff to meet his initial burden of proving that the Debtor once owned substantial and identifiable assets that are no longer available for A&H. *See Self*, 523 B.R. at 250. The Plaintiff failed to produce any documentation that the Debtor owned substantial and identifiable assets. As such, the court need not consider the second stage of proof under section 727(a)(5).

Thus, the Plaintiff has not met its burden with respect to section 727(a)(5) and his objection to discharge fails in this respect.

B.    Section 523 Causes of Action

   1.       11 U.S.C. § 523(a)(2)(a)

Section 523 enumerates specific, limited exceptions to the dischargeability of debts. Section 523(a)(2)(A) provides, in relevant part, that an individual debtor is not discharged from any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition….

11 U.S.C. § 523(a)(2)(A).

First, a plaintiff must establish that the debtor owes him a debt. *See Zirkel v. Tomlinson (In re Tomlinson)*, Adv. No. 96 A 1539, 1999 WL 294879, at *7 (Bankr. N.D. Ill. May 10, 1999) (Katz, J.). Second, a plaintiff must show that the debt falls within one of the specified grounds under section 523(a)(2)(A). *Wachovia Sec., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 668 (Bankr. N.D. Ill. 2010) (Goldgar, J.). Three separate grounds for holding a debt to be nondischargeable are included under section 523(a)(2)(A): false pretenses, false representation or actual fraud. *Id.*; *see also Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 771 (Bankr. N.D. Ill. 2010) (Squires, J.) (*citing Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001) (Goldgar, J.)).

In this instance, the Debtor does not dispute that he owes a debt to A&H for the judgment award in the amount of $412,622.00. In the Complaint, the Plaintiff alleges that the Debtor incurred

---

[19]        Tr. 173-74, Sept. 1, 2015.

[20]        Tr. 174, Sept. 1, 2015.

this debt by false statements, false pretenses or actual fraud, and as such should be deemed nondischargeable.

        a.    False Representation and False Pretenses

    To except a debt from discharge under section 523(a)(2)(A) based on false pretenses or a false representation, the creditor must establish the following elements: (1) the debtor made a false representation or omission of fact; (2) which the debtor (a) knew was false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) upon which the creditor justifiably relied. *Reeves v. Davis (In re Davis)*, 638 F.3d 549, 553 (7th Cir. 2011); *see also Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997); *Jahelka*, 442 B.R. at 668-69. A creditor must establish all three elements to support a finding of false pretense or false representation. *Ryan*, 408 B.R. at 156; *see also Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 700 (Bankr. N.D. Ill. 2002) (Squires, J.). Failure to establish any one fact is outcome determinative. *Hanson*, 432 B.R. at 771 (*citing Jairath*, 259 B.R. at 314).

    Under section 523(a)(2)(A), a false representation is an express misrepresentation that can be demonstrated either by a spoken or written statement but must also be demonstrated through conduct. *See Scarpello*, 272 B.R. at 700; *Nite Lite Signs & Balloons, Inc. v. Philopulos (In re Philopulos)*, 313 B.R. 271, 281 (Bankr. N.D. Ill. 2004) (Schmetterer, J.); *New Austin Roosevelt Currency Exch., Inc. v. Sanchez (In re Sanchez)*, 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002) (Schmetterer, J.). Thus, a spoken or written statement is not required for a false representation, so "[a] debtor's silence regarding a material fact can constitute a false representation under § 523(a)(2)(A)." *Hanson*, 432 B.R. at 772 (internal quotation omitted); *see also Scarpello*, 272 B.R. at 700. "A debtor's failure to disclose pertinent information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression." *Ryan*, 408 B.R. at 157 (*citing Trizna & Lepri v. Malcolm (In re Malcolm)*), 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992) (Wedoff, J.)).

    In contrast, "[f]alse pretenses in the context of section 523(a)(2)(A) include implied misrepresentations or conduct intended to create or foster a false impression." *Media House Productions, Inc. v. Amari (In re Amari)*, 483 B.R. 836, 846 (Bankr. N.D. Ill. 2012) (Schmetterer, J.) (*citing Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996) (Squires, J.)). The implication arises when a debtor, with the intent to mislead a creditor, engages in "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, ... or understanding of a transaction, in which [the] creditor is wrongfully induced by [the] debtor to transfer property or extend credit to the debtor ...." *Paneras*, 195 B.R. at 406 (internal quotations omitted); *see also Amari*, 483 B.R. at 846.

    A false pretense does not necessarily require overt misrepresentations. *Paneras*, 195 B.R. at 406. "Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.*; *see also Hanson*, 432 B.R. at 771 (finding that a false pretense is "established or fostered willfully, knowingly and by design; it is not the result of inadvertence").

    An element common to a false representation and false pretenses is reliance. The United States Supreme Court has clarified that section 523(a)(2)(A) requires only a showing of "justifiable"

reliance. *See Field v. Mans*, 516 U.S. 59, 73-75 (1995); *see also Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 673 (7th Cir. 1995). Justifiable reliance is a less demanding standard than reasonable reliance and "does not mean that [the creditor's] conduct must conform to the standard of the reasonable man." *Paneras*, 195 B.R. at 406 (*quoting Field*, 516 U.S. at 71). Rather, justifiable reliance "requires only that the creditor did not 'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Ojeda*, 599 F.3d. at 717 (*quoting Field*, 516 U.S. at 71).

Whether a party justifiably relies on a misrepresentation is "determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff." *Id.*; *see also Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002) (Schmetterer, J.). "[A] person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Mercantile Bank v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (Lefkow, J.) (*quoting Field*, 516 U.S. at 70). "However, a plaintiff may not bury his head in the sand and willfully ignore obvious falsehoods." *Johnston v. Campbell (In re Campbell)*, 372 B.R. 886, 892 (Bankr. C.D. Ill. 2007) (internal quotations omitted).

Several courts in this Circuit have determined that "[t]o satisfy the reliance element of section 523(a)(2)(A), the creditor must show that the debtor made a material misrepresentation that was the cause-in-fact of the debt that the creditor wants excepted from discharge." *Scarpello*, 272 B.R. at 700; *see also Mayer*, 51 F.3d at 676 "reliance means the conjunction of a material misrepresentation with causation in fact"; *Hanson*, 432 B.R. at 773. Accordingly, these courts have required the plaintiff to show that the debtor's conduct proximately caused the plaintiff's loss, thus making proximate cause an additional requirement under section 523(a)(2)(A). *See Heptacore, Inc., v. Luster (In re Luster)*, 50 F. Appx. 781, 784 (7th Cir. 2002); *Tomlinson*, 1999 WL 294879, at *7; *Microtech Int'l v. Horwitz (In re Horwitz)*, 100 B.R. 395, 397-398 (Bankr. N.D. Ill. 1989) (Katz, J.).

In an attempt to meet his burden of proof on the preceding factors, the Plaintiff tried to show at the Trial that the Debtor made false representations to A&H from the beginning of their relationship by way of direct testimony of Maria Bailey and himself. The Plaintiff attempted to show that the Debtor allegedly did not believe that a contract existed between the parties that obligated him to pay insurance reimbursements to A&H, and as a result of that belief, the Debtor allegedly never had any intentions of paying A&H any insurance proceeds.[21]

In addition, the Plaintiff attempted to show through his own testimony that the Debtor was not making the payments to A&H because the Debtor allegedly falsely represented that he was not receiving the payments from Medicare and Medicaid, when in fact he was receiving payments on an accelerated basis via "fast track." According to the Plaintiff's testimony, "fast track" is a process in which a physician receives insurance reimbursements from Medicare and Medicaid on an accelerated basis if the physician provides medical services in a medically underserved community.[22]

---

[21]    Tr. 213-14, Sept. 2, 2015.

[22]    Tr. 273, Sept. 2, 2015.

In reviewing the foregoing evidence, the court can find that the Plaintiff has shown that the Debtor was on a "fast track" system of receiving reimbursements from Medicare and Medicaid. The court also finds that the Debtor was making nominal payments to A&H.[23]

However, this is not enough. As noted above, the Plaintiff must show that: (1) the Debtor made a false representation or omission of fact; (2) which the Debtor (a) knew was false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) upon which A&H justifiably relied. *See Davis*, 638 F.3d at 553. Nothing offered by the Plaintiff is sufficient for the court to conclude that the Debtor even made a false representation or omission of fact, nor that he had the required intent to deceive because he was making nominal payments to A&H while he was receiving fast track reimbursements from insurance companies. *Id.*

Therefore, the court is forced to conclude that the Debtor's debt should not be deemed nondischargeable under section 523(a)(2)(A) based on false pretenses or false representation.

> b.   Actual Fraud

A different analysis is used when a creditor alleges actual fraud. In order to except a debt from discharge on the basis of actual fraud, a creditor must establish that: (1) a fraud occurred; (2) the debtor intended to defraud; and (3) the fraud created the debt that is the subject of the discharge dispute. *Jahelka*, 442 B.R. at 669; *see also Ryan*, 408 B.R. at 157; *Scarpello*, 272 B.R. at 701; *Jairath*, 259 B.R. at 314. The fraud exception to the dischargeability of debts in bankruptcy does not reach constructive frauds, only actual ones. *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000); *see also Ryan*, 408 B.R. at 157. In addition, "broken promises to pay are just that, broken promises and not fraud." *Stelmokas v. Sinkuniene (In re Sinkuniene)*, Adv, No. 10ap01418, 2012 WL 4471583, at *10 (Bankr. N.D. Ill. Sept. 27, 2012) (Barnes, J.). However, if the promising party never had an intention to perform, it could constitute fraud. *See Sullivan v. Glenn (In re Glenn)*, 502 B.R. 516, 540. (Bankr. N.D. Ill. 2013) (Barnes, J.) (*citing Chriswell v. Alomari (In re Alomari)*, 486 B.R. 904, 912 (Bankr. N.D. Ill. 2013) (Schmetterer, J)).

Unlike false pretenses and false representations, "actual fraud" does not require proof of a misrepresentation or reliance. *McClellan*, 217 F.3d at 892; *see also Jahelka*, 442 B.R. at 669; *Hanson*, 432 B.R. at 771. While there is no definite rule defining fraud, "it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *McClellan*, 217 F.3d at 893 (internal quotations omitted).

In an effort to meet his burden of proof on the preceding factors, the Plaintiff attempted to show at the Trial that the Debtor's representation to A&H, namely not having sufficient funds to distribute to A&H, which he was supposed to be receiving from insurance company reimbursements, was fraudulent.[24] The Plaintiff attempted to demonstrate this by introducing an

---

[23]   On direct, the Plaintiff stated that the Debtor was did make some payments that were "being dribbled in, only to keep the process moving." *Id.*

[24]   Tr. 214, Sept. 2, 2015.

exhibit. However, the court already granted the Debtor's Motion in Limine with respect to this exhibit, so the Plaintiff was not permitted to use it to prove the elements of fraud.[25]

The Plaintiff also tried to demonstrate fraud by way of Ms. Bailey's testimony. In questioning Ms. Bailey, the Plaintiff tried to show that when Ms. Bailey attempted to collect on payments that the Debtor owed to A&H, he was "hesitant in giving [her] the paperwork"[26] and ultimately failed to pay A&H a portion of the reimbursements that the Debtor was supposed to receive from insurance companies. As a result, Ms. Bailey had to borrow money in order to make payroll.[27] The Plaintiff tried to show that the Debtor's behavior was fraudulent because the Debtor was allegedly receiving payments from Medicare and Medicaid on "fast track," but the Debtor was representing to A&H and Ms. Bailey that he did not have payments to give them.[28]

In addition, the Plaintiff tried to assert, by way of his own testimony, that it was fraudulent for the Debtor to treat patients that he derived from A&H as his own individual patients that he could bill separately and conceal such billing under an entity that A&H knew nothing about at the time, namely Norybdeer Ltd.[29] However, the court finds that this was merely the Plaintiff's opinion because the Plaintiff failed to produce any evidence that supported that this was an actual fraud.

Once again, the court saw the Plaintiff struggle to litigate the elements of his claim. Throughout the Trial, the court tried to strike a balance between not re-litigating what was already tried in State Court, while also giving the Plaintiff the leeway necessary to go over the underlying allegations to establish facts that may give rise to a claim of fraud.[30]

In reviewing the foregoing evidence, the court can conclude that the Debtor's failure to pay A&H for the services he provided at A&H caused Ms. Bailey to suffer harm in the form of her having to take out a loan to pay her employees. However, this is not enough to prove fraud. The Plaintiff must prove that: (1) a fraud occurred; (2) the Debtor intended to defraud; and (3) the fraud created the debt that is the subject of the discharge dispute. *See Jahelka*, 442 B.R. at 669. The Plaintiff only showed that the Debtor failed to pay A&H and that A&H incurred a debt as a result of the Debtor's failure to pay. Also, while the Plaintiff showed that the Debtor's failure to pay caused A&H to incur a harm, the Plaintiff still failed to show that this harm was a result of the Debtor's fraud and that the Debtor intended to defraud A&H. *See Cantrell*, 217 F.3d at 894.

Moreover, the State Court Judgment does not help the Plaintiff's case because it did not address the issue of fraud. Nothing in the State Court Judgment allows this court to conclude that the State Court found that the Debtor acted fraudulently. The State Court Judgment is silent in that regard.

---

[25]   The court will also not name the exhibit in this opinion.

[26]   Tr. 257, Sept. 2, 2015.

[27]   Tr. 258, Sept. 2, 2015.

[28]   Tr. 257, Sept. 2, 2015.

[29]   Tr. 278, Sept. 2, 2015.

[30]   Tr. 221, Sept. 2, 2015.

Taken together, the court is forced to conclude that the debt does not qualify for nondischargeability under section 523(a)(2), and the intent element of fraud does not need to be further discussed.

      2.      11 U.S.C. § 523(a)(6)

Section 523(a)(6) provides that an individual debtor is not discharged from any debt:

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

To state a claim under section 523(a)(6), a complaint must allege three elements: (1) the debtor owes a debt resulting from an injury he caused to another entity or that entity's property; (2) his actions were willful; and (3) his actions were malicious. *Oakland Ridge Homeowners Ass'n v. Braverman (In re Braverman)*, 463 B.R. 115, 119 (Bankr. N.D. Ill. 2011) (Goldgar, J.).

Generally, an act of fraud is not enough to establish a cause of action under section 523(a)(6). For purposes of section 523(a)(6), "willful" means intent to cause injury, not simply intentional conduct that results in injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). "A creditor must plead . . . that the debtor actually intended to harm him and not merely that the debtor acted intentionally and he was thus harmed." *Colemichael Invs., L.L.C. v. Burke (In re Burke)*, 398 B.R. 608, 625-26 (Bankr. N.D. Ill. 2008) (Squires, J.).

Thus intent is a required element of section 523(a)(6) as well as section 523(a)(2)(A).

It is the knowledge of wrongdoing and the absence of excuse that defines malicious behavior for purposes of section 523(a)(6). *Centier Bank v. Young (In re Young)*, 428 B.R. 804, 818 (Bankr. N.D. Ind. 2010). An action in this context is considered "malicious" if it is taken "in conscious disregard of one's duties without just cause or excuse." A debtor does not have to act with ill will or a specific intent to do harm to the creditor for the conduct to be malicious. *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). "The test for maliciousness under § 523(a)(6) is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) done without just cause and excuse." *Vozella v. Basel Van Aswegen (In re Basel Van Aswegen)*, 366 B.R. 850, 869 (Bankr. N.D. Ill. 2007) (Squires, J.) (*citing Park Nat'l Bank & Trust of Chicago v. Paul (In re Paul)*, 266 B.R. 686, 696 (Bankr. N.D. Ill. 2001) (Schmetterer, J.)).

That said, the debtor may be culpable under section 523(a)(6) if the debtor's act "'was substantially certain to result in injury.'" *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774-75 (7th Cir. 2013) (*quoting Bukowski v. Patel*, 266 B.R. 838, 844 (E.D. Wis. 2001)). Thus a debtor who should have known that his or her actions would result in injury would be liable.

"An injury is willful within the meaning of section 523(a)(6) only if intended; if it's the result but not the *intended* result of an intentional act, the debt arising from the injury is dischargeable . . ." *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012) (internal citation omitted). Because a debtor will rarely admit to engaging in willful and malicious conduct, those requirements may be inferred by the surrounding circumstances. *Burke*, 398 B.R. at 626.

Finally, it must be noted that sections 523(a)(2)(A) and (a)(6) must be read independently. The Seventh Circuit has held that demonstrating act of fraud alone is not enough to establish grounds under section 523(a)(6), even if it appears on its face to do so. *Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 964 (7th Cir. 2004) ("§ 523(a)(6) cannot make all debts procured by fraud nondischargeable, because that would make superfluous § 523(a)(2), § 523(a)(4), and § 523(a)(11), all of which make different sorts of debts procured by fraud nondischargeable."). If an act of fraud is expressly covered elsewhere in section 523, section 523(a)(6) cannot be used to circumvent those requirements. *Id.*

Once again, the Plaintiff failed to meet his burden of proof on the preceding factors. The Plaintiff attempted to show at the Trial that A&H suffered willful and malicious injury from the Debtor because the Debtor did not inform A&H that he was receiving insurance reimbursements on an accelerated "fast track" basis from Medicare and Medicaid, and therefore allegedly had the money to make payments to A&H, as mentioned above.

Using the same analysis as the court did above, the court draws the same conclusions, namely that the Plaintiff has shown that the Debtor was on a "fast track" system of receiving reimbursements from Medicare and Medicaid, and was making nominal payments to A&H.

Again, this is not enough. The Plaintiff must show that: (1) the Debtor owes a debt resulting from an injury he caused to another entity or that entity's property; (2) the Debtor's actions were willful; and (3) the Debtor's actions were malicious. *See Braverman*, 463 B.R. at 119. While the Plaintiff can possibly show that a harm occurred, namely that the Debtor's failure to make payments to A&H caused Ms. Bailey to take out a loan in order to pay her employees, the Plaintiff does not produce any evidence showing that the Debtor's failure to pay was malicious. The Debtor was making some form of payments to A&H during that time, which is not a malicious and conscious disregard of one's duties. *See Young*, 428 B.R. at 818.

Therefore, the court is forced to conclude that the debt does not qualify for nondischargeability under section 523(a)(6).

## CONCLUSION

As noted above and for the foregoing reasons, the Plaintiff has failed to prove his causes of action under sections 727(a)(4), 727(a)(5), 523(a)(2)(A) and 523(a)(6) of the United States Bankruptcy Code. The Debtor's debt of actual damages that was awarded from the Cook County Circuit Court is dischargeable. Likewise, the Debtor will not be denied a discharge. The Debtor's motion for directed verdict is granted. Accordingly, judgment will be entered in favor of the Debtor on all counts of the Complaint.

A separate Order will be issued concurrent with this Memorandum Decision.

Dated: December 30, 2015

_____
Timothy A. Barnes
United States Bankruptcy Judge